A97A2113. FARMER et al. v. BRANNAN AUTO PARTS, INC.

(498 SE2d 583)

POPE, Presiding Judge.

In this products liability case, plaintiffs Gerald and Paige Farmer sued defendant Brannan Auto Parts, Inc. d/b/a Lawrenceville Auto Parts to recover for injuries Gerald Farmer received in an explosion. The explosion occurred when Farmer attempted to repair a flat tire on his truck by welding a crack in the wheel's metal rim with an acetylene blowtorch. The flat tire was still attached to the rim, and several months before this incident Farmer had inflated that tire with a can of "Snap Fix-a-Flat," which injects a flammable pressurized gas and sealant. According to the complaint, the heat from the torch caused Fix-a-Flat remaining in the tire to explode. The Farmers alleged that Lawrenceville Auto Parts distributed this "dangerous" product to the retail store from which Gerald purchased the sealant without giving him adequate warning of its explosive properties.[1] The trial court granted summary judgment to Lawrenceville Auto Parts. We affirm the trial court's grant of summary judgment in favor of Lawrenceville Auto Parts, as well as the trial court's decision not to strike three affidavits filed by the defendant.

1. Whether termed "negligent distribution" or "negligent failure to warn," Farmer's claim charges that Lawrenceville Auto Parts distributed a product without telling consumers the dangers of that product. Although a distributor has a duty to communicate to customers and users the dangers of a product, we hold that duty did not arise here because the manufacturer of Fix-a-Flat had already warned consumers of the particular danger at issue.

---

[1] The Farmers also sued the manufacturer of the tire inflator and the retailer, but neither of those defendants is a party to this appeal.

In December 1991, one of the tires on Farmer's pickup truck went flat. When inflating the tire with air did not solve the problem, Farmer purchased a can of Fix-a-Flat tire inflator from the "Highway 20 Store." The evidence is undisputed that Farmer received a can of Fix-a-Flat and read a warning on the can, which informed him the substance was flammable; that it should not be used near heat or flame; and that it would remain flammable when transferred from the can into a tire. After reading the directions, Farmer sprayed the entire contents of the can into the flat tire on the date of purchase.

The tire continued to have a slow leak over the next few months, and Farmer added air to the tire four or five times. He believed that in doing so, he had replaced the inflator in the tire with air, as specified in the directions on the can. On March 23, 1992, after the tire had gone completely flat, Farmer inspected the tire and discovered a three-quarter-inch crack in the rim of the wheel. Farmer decided to repair the rim by welding it, without removing the wheel from the truck or separating the flattened tire from the rim. Shortly after Farmer touched the welding iron to the rim, the tire exploded, seriously injuring Farmer.

Farmer claims he did not understand that the substance would remain flammable "three and a half months" after he placed it in the tire and believed the Fix-a-Flat had dissipated by that time. The plaintiffs claim Lawrenceville Auto Parts had a duty to warn him of that danger. They point to the fact that, during 1991, a Lawrenceville Auto Parts vice-president learned that there had been "problems" with tire inflators such as Fix-a-Flat, including the fact that the propellant in some tire inflators mixed with air to form an explosive gas.

We agree with Farmer's contention that the distributor "of a product which, to [its] actual or constructive knowledge, involves danger to users [has] a duty to give warning of such danger . . . at the time of sale and delivery." *Beam v. Omark Indus.*, 143 Ga. App. 142, 145 (1) (b) (237 SE2d 607) (1977). See also *Bishop v. Farhat*, 227 Ga. App. 201, 206 (6) (489 SE2d 323) (1997). But *Beam* involved a situation in which the seller had separated from the product the manufacturer's warnings and had given the buyer incorrect information about the safe use of the product. *Beam*, 143 Ga. App. at 145. *Bishop*, likewise, involved a situation in which the distributor knew of a potential allergic reaction to the product but failed to communicate *any* warning to consumers. *Bishop*, 227 Ga. App. at 206. These cases do not address the situation at hand, in which the distributor had knowledge of a danger but the manufacturer had already warned of such a danger.

Webster's Ninth New Collegiate Dictionary defines "flammable" to mean "capable of being easily ignited and burned quickly." Such a definition is consistent with the defendant's officer's understanding

of the dangers of Fix-a-Flat. In fact, Farmer himself knew from reading the label that the substance could explode if exposed to heat or flame. There is no evidence that Lawrenceville Auto Parts knew of a situation like Farmer's, in which a consumer had used the product, refilled his tire with air numerous times over several months, and then suffered an explosive injury when he used an acetylene torch on the rim of a *flattened* tire. Additionally, no evidence in the record shows Lawrenceville Auto Parts knew or should have known the length of time the substance remained flammable or that the distributor knew or should have known consumers would misunderstand the manufacturer's warning, which stated that the substance would remain flammable after users placed it in the tire.

"[W]hether a duty to warn exists depends upon foreseeability of the use in question, the type of danger involved, and *the foreseeability of the user's knowledge of the danger*. [Cit.]" (Emphasis supplied.) *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74, 75 (1) (460 SE2d 532) (1995). While this question is often for the jury, this Court has held on numerous occasions that where a product is sold to a particular group or profession, there is no duty to warn of risks generally known to that group or profession. See, e.g., *Exxon Corp. v. Jones*, 209 Ga. App. 373, 375 (433 SE2d 350) (1993). Similarly, in this case we find that Lawrenceville Auto Parts had no duty to communicate to users a danger already clearly listed on the product itself. Given the circumstances, we may hold as a matter of law that a reasonable distributor, given the same knowledge of danger and the same manufacturer's warning, would not foresee that a user would not understand that danger.

The principle stated in *Beam* and *Bishop* must be confined to those situations in which evidence shows a distributor or seller is aware of a danger either not communicated by the manufacturer's warning or substantively different from the dangers the manufacturer has included in a warning label. To hold otherwise would create a jury question in any case where the manufacturer has included a warning label on the product and the seller has read that warning and is aware of that danger.

While the dissent speaks of a distributor's duty to inspect for defects, there is no evidence that Fix-a-Flat is otherwise "defective" as that term is used in the case on which the dissent relies, *Sirmons v. Derst Baking Co.*, 221 Ga. App. 127, 128 (470 SE2d 515) (1996). There is certainly no precedent for holding Lawrenceville Auto Parts responsible under any theory of defective design. Compare *Banks v. ICI Americas*, 264 Ga. 732, 733 (1) (450 SE2d 671) (1994), holding manufacturers strictly liable for safe design of products under a risk-utility balancing test. As the Supreme Court noted in *Banks*, 264 Ga. at 733, except for design defects, even under a *strict liability* analy-

sis, products which "[are] properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions can not be said to be defective." (Citation and punctuation omitted.) See *Center Chem. Co. v. Parzini*, 234 Ga. 868, 870 (4) (218 SE2d 580) (1975). *Sirmons* itself involved a *manufacturing* defect, as a dime had apparently fallen into a honeybun during the baking process. Here, other than the issue of the warning's adequacy, no evidence shows Fix-a-Flat was otherwise defective. As the trial court properly granted summary judgment to Lawrenceville Auto Parts on the failure to warn claim, no other issue remains for trial.

Furthermore, it appears that the failure of Lawrenceville Auto Parts to provide Farmer with its knowledge of the danger did not proximately cause Farmer's injuries because Farmer already knew the substance was flammable and remained flammable when placed in a tire. See *Exxon Corp. v. Jones*, 209 Ga. App. at 375-376 (plaintiff's injuries from LP gas explosion were not caused by defendant's negligent failure to warn of dangerous propensities of LP gas, as plaintiff was already aware of those dangers).

Under the principles set forth by the Supreme Court in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), summary judgment for Lawrenceville Auto Parts is proper because no evidence shows the defendant failed to warn Farmer of any danger of Fix-a-Flat other than the danger already communicated by the warning label, and about which Farmer was aware. The dissent's citation to *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997) does not persuade us to reach a contrary conclusion. In *Robinson*, the Supreme Court carved a narrow exception to *Lau's Corp*. That exception, however, applies only to situations where the question is not whether the defendant was negligent, but rather is whether, despite the defendant's negligence, the plaintiff failed to exercise due care to avoid the injury. Here, the evidence shows Lawrenceville Auto Parts breached no duty to Farmer. Therefore, summary judgment is proper. And our resolution of this issue renders it unnecessary to address whether Lawrenceville Auto Parts did, in fact, distribute the can of Fix-a-Flat that Farmer bought.

2. The Farmers enumerate as error the trial court's failure to grant their motion to strike the affidavits of Jeffrey Mize, Coy Baker, and Hazel Weathers. Their motion was based upon the affidavits' failure to state that they are based upon the personal knowledge of the affiants. See OCGA § 9-11-56 (e).

With respect to the affidavit of Jeffrey Mize, this affidavit states that Mize is the vice-president of Lawrenceville Auto Parts, and that he "personally direct[s] and oversee[s] the operation of Lawrenceville Auto Parts Store." "Although the affidavit of [Jeffrey Mize] . . . did not specifically state that it was made of his own personal knowl-

edge, it is presumed that the facts are within the personal knowledge of the affiant by reason of his position as [vice-president of the auto parts store]." *McGregor v. First Nat. Bank of Brunswick*, 156 Ga. App. 521, 522 (2) (275 SE2d 107) (1980).

Coy Baker's and Hazel Weathers' affidavits also do not state that they were made on personal knowledge. "However, the affidavit[s] also [include] statements which clearly are based on personal knowledge." *Moon v. Yancy*, 186 Ga. App. 19, 20 (1) (366 SE2d 357) (1988). Coy Baker's affidavit lists his responsibilities for selling, as a traveling salesman, parts and supplies for Lawrenceville Auto Parts. This is clearly within his personal knowledge. The statements made in Hazel Weathers' affidavit are also within her personal knowledge, as they detail what steps she took, as Lawrenceville Auto Parts' inventory control manager, to determine whether or not Lawrenceville Auto Parts had ever purchased or distributed any Snap products. Furthermore, all three affidavits are largely cumulative of deposition testimony given by the respective affiants. Accordingly, the trial court did not err in failing to strike these affidavits.

*Judgment affirmed. Andrews, C. J., Beasley, Johnson and Smith, JJ., concur. McMurray, P. J., and Blackburn, J., dissent.*

BLACKBURN, Judge, dissenting.

Because I believe that the questions presented here must be determined by a jury, I respectfully dissent from the opinion of the majority.

1. A genuine issue of material fact exists as to whether Lawrenceville Auto Parts was negligent in distributing Fix-a-Flat. Because Lawrenceville Auto Parts is a distributor and not a manufacturer, the strict liability provision of OCGA § 51-1-11 is inapplicable. Instead, "[i]t is the general rule that a vendor or dealer who is not the manufacturer is under no obligation to test an article purchased and sold by him for the purpose of discovering latent or concealed defects, but that when he purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous quality, and with nothing tending reasonably to call his attention thereto, he is not negligent in failing to exercise care to determine whether it is dangerous or not. In such a case he may assume that the manufacturer has done his duty in properly constructing the article and in not placing upon the market a commodity which is defective and likely to inflict injury." (Punctuation omitted.) *Sirmons v. Derst Baking Co.*, 221 Ga. App. 127, 128 (470 SE2d 515) (1996).

This language makes it clear that a distributor could be negligent in distributing a product if the distributor has knowledge of its dangerous quality, or if something calls its attention to the possibil-

ity of danger inherent in the product. See, e.g., *Beam v. Omark Indus.*, 143 Ga. App. 142, 145 (1) (b) (237 SE2d 607) (1977).

The evidence shows that prior to Farmer's accident, Jeffrey Mize, the vice-president of Lawrenceville Auto Parts, read an article in a trade magazine stating that there had been problems with tire inflators. Mize deposed that the article detailed how an explosive mixture was formed when tire inflator propellants mixed with air in a tire. In response to this information, Mize spoke with some tire inflator sales representatives. He was told, as the article had also stated, that a new chemical mixture was being investigated for future use and that future shipments of the old chemical mixture would include warning labels which could be attached directly to the tire in order to notify anyone who came in contact with it that a sealant had been used. He was also told that any tire inflators which were made with the old chemical mixture already had warning labels attached to the can.

Mize then checked to see if Lawrenceville Auto Parts had any of the "old cans" on the shelf and found that, although it did have some of the cans, the cans did have warning labels on them. Mize shared what he had learned with all of his employees, "just so that they knew as a consumer there was potential if a safety precaution weren't [sic] taken, there could be the problem."

Because Mize had knowledge that tire inflators could be dangerous, under *Sirmons*, supra, he had a duty to exercise reasonable care to determine whether the tire inflators Lawrenceville Auto Parts was selling were dangerous. Mize ultimately made the determination that although Lawrenceville Auto Parts' tire inflators were of the "old" variety and were dangerous, the warning labels on the cans were adequate to warn consumers of their dangerous nature. The reasonableness of this determination should be left to a jury.

The directions on the Fix-a-Flat can stated that the tire inflator was flammable, that it should not be used near heat or flame, and that the propellant would remain flammable when transferred from the can into a tire. *The directions also stated that the tire inflator should be replaced with air at the earliest opportunity*, and, when making such replacement, the tire inflator should be kept away from flame or sparks. After adding air to the tire four or five times over the space of several months, Farmer believed that he had replaced the inflator in the tire with air, as specified in the directions on the can. The reasonableness of defendant's conduct in this regard is also a jury question. *Dorsey Trailers Southeast v. Brackett*, 185 Ga. App. 172, 175 (3) (363 SE2d 779) (1987).

While the trial court found as a matter of law that Mize's actions were reasonable, it based its finding upon the fact that the trade magazine read by Mize did not refer to Fix-a-Flat by name as being a dangerous tire inflator. This fact, however, would not be dispositive,

as Mize testified that the article did not refer to any product by name, and that he nonetheless checked all the products that he had. "[I]f a dealer does inspect or test its merchandise, it must do so non-negligently. Thus, having made inspections, [Lawrenceville Auto Parts] would be liable for any patent defect which the inspections might reveal and could be negligent for not discovering such defects as might reasonably have been unearthed." (Citations and punctuation omitted.) *Holman Motor Co. v. Evans*, 169 Ga. App. 610, 614 (2) (c) (314 SE2d 453) (1984). Therefore, under the standard of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), a genuine issue of material fact remains as to whether or not Lawrenceville Auto Parts negligently distributed Fix-a-Flat with knowledge of its dangerous propensities.

2. Plaintiffs also claim that Lawrenceville Auto Parts negligently failed to warn Farmer of the dangerousness of Fix-a-Flat. Although intertwined with the count regarding negligent distribution, slightly different law applies to this issue.

"In a products liability case, the existence of a duty to warn depends upon foreseeability of the use in question, the type of danger involved, and the foreseeability of the user's knowledge of the danger." (Punctuation omitted.) *Dorsey*, supra at 175 (2). In *Beam*, supra at 145 (1) (b), we held that "[a] manufacturer and retailer of a product which, to their actual or constructive knowledge, involves danger to users have a duty to give warning of such danger to the purchaser at the time of sale and delivery." (Punctuation omitted.)

In this case, Lawrenceville Auto Parts had actual or constructive knowledge of the danger inherent in tire inflators. Under *Beam* it therefore had a duty to give warning of such danger. Because Lawrenceville Auto Parts' immediate purchaser in this case was the Highway 20 Store, not Farmer, we must determine whether Farmer can bring an action against Lawrenceville Auto Parts for failure to warn or is limited to bringing such action against the Highway 20 Store from which he purchased the product.

A distributor's duty to warn does not run solely to its immediate purchaser, the retailer, but rather to anyone who might reasonably come into contact with the product. Therefore, Farmer's claim against Lawrenceville Auto Parts was viable as the retailer's customer is one who might reasonably come into contact with the product. See generally *Bishop v. Farhat*, 227 Ga. App. 201, 206 (6) (489 SE2d 323) (1997) (summary judgment in favor of distributor of medical gloves used by non-purchasing nurse held improper). A distributor, who has knowledge of a dangerous quality associated with a product, is not relieved of its duty to give warning of such danger merely because it sells the product to a retailer. A jury issue remains as to the distributor's knowledge of the dangerousness of the product

it distributed to the retailer, with knowledge that the product would ultimately be passed on to the buying public. A jury's determination that the defendant had such knowledge gives rise to a duty to warn Farmer thereof.

Although the duty to warn might be satisfied under some circumstances by giving an appropriate warning to the retailer to which the product is initially sold, it is uncontroverted that Lawrenceville Auto Parts did not warn either Farmer or the Highway 20 Store in the present case. The instructions on the can of Fix-a-Flat direct the user to replace the sealant with air at the earliest opportunity. In this case, Farmer added air to his tire, not just once, but several times, believing that in doing so he had replaced the explosive sealant with air as directed. Indeed, at the point that Farmer welded the tire, he had added air on several occasions and such air had since escaped. Certainly, then, it was reasonable for Farmer to think that the sealant had been replaced with air in accordance with the directions on the can. Lawrenceville, on the other hand, knew that future shipments of tire sealants would include warnings to be adhered to the tire, itself, showing that a sealant had been used. Of course, the need for such an additional warning clearly implies that the dangerous propensities of the sealant may remain in the tire even after it has been inflated. Clearly, a question of fact remains as to whether the manufacturer's warning on the can of Fix-a-Flat was sufficient to satisfy Lawrenceville Auto Parts' duty to warn of the dangerousness of the product. This is a question for the jury, *Beam*, supra, and, accordingly, the trial court's grant of summary judgment with regard to the duty of Lawrenceville Auto Parts to warn Farmer was error.

3. Contrary to the position taken by the majority, this is not, and should not be, a case subject to summary adjudication with regard to either the plaintiff's claim concerning the negligent distribution of the tire inflator or the claim concerning the failure to warn of dangers associated with such tire inflator.

The majority contends that *Beam*, supra, and *Bishop*, supra, "must be confined to those situations in which evidence shows a distributor or seller is aware of a danger either not communicated by the manufacturer's warning or substantively different from the dangers the manufacturer has included in a warning label." As the latter circumstance necessarily includes the former, the majority's standard must be construed to mean that a distributor has a duty to warn only when it is aware of a danger that is substantively different from those dangers communicated on a product warning. Therefore, based on its undefined, court-decided distinction regarding substantive differences between dangers, the majority would immunize a distributor from liability even when such distributor knows of a danger associated with a product, it knows that the danger has not been

communicated to the purchaser in the product's warning, and it nevertheless distributes the product for sale to the consumer. Even accepting the majority's announced standard, it is a question of fact whether the chemical explosion which caused Farmer's injuries is substantially different from the dangers covered in the instructions on the Fix-a-Flat can. In any event, semantics should not be used by the court to usurp the role of the jury in cases such as this.

In support of its conclusion that Lawrenceville had no duty to warn Farmer in this case, the majority cites *Exxon Corp. v. Jones*, 209 Ga. App. 373 (433 SE2d 350) (1993). That case, authored by the undersigned, is distinguishable from the matter now before us. In *Jones* this Court reversed the denial of defendant Exxon's motion for summary judgment on plaintiff's claim against it for injuries resulting from an explosion of leaked LP gas purchased from and provided by Tugalo Gas Company, the distributor, based on the learned intermediary doctrine. Exxon had provided training and warnings to Tugalo in connection with the sale and distribution of the LP gas which Exxon had sold in bulk to Tugalo, its distributor. This Court held that "[a]ny duty owed to Jones in the handling of the gas after its delivery, was owed by Tugalo, not Exxon." Id. at 376. The appeal did not involve Tugalo, the entity which had a duty to warn Jones.

The present case does not involve the learned intermediary doctrine, and *Jones* did not involve the grant of summary judgment to the defendant whose duty it was to warn the plaintiff. In addition, *Jones* does not support the majority's contention that Lawrenceville could not have foreseen, as a matter of law, the way in which Farmer used the tire inflator. Indeed, the facts of this case, even as described by the majority, show otherwise. The vice-president of Lawrenceville read an article admonishing that tire inflators could cause explosions, and it is just such an explosion which occurred in this case.

Whether the manufacturer's warning on the can of Fix-a-Flat was adequate to immunize Lawrenceville Auto Parts from its duty to warn of this foreseeable explosion is a question for the jury. In so holding, we take direction from *Robinson v. Kroger Co.*, 268 Ga. 735 (493 SE2d 403) (1997), in which our Supreme Court recently emphasized that questions of negligence of the parties should generally be left for jury determination. Georgia courts should not generally remove such issues from the jury. While this case involves negligence in a products liability setting, not negligence in a premises liability setting, the focus of the *Robinson* decision is allowing questions of negligence to be decided by a jury. Here, the majority would substitute its judgment on the factual issue of the sufficiency of the defendant's actions and the adequacy of the warning for that of a jury, contrary to the direction of *Robinson*. This is clearly a question for the jury. While most people would not have acted as plaintiff did in this

matter, this does not remove the matter from jury determination.

The majority suggests that while such issues are not subject to summary adjudication in a premises liability case, they somehow would be in a products liability case. Fact issues are for juries, not judges, and this is so without regard to the type of tort involved.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED MARCH 19, 1998

*Llewellyn & Swanson, David J. Llewellyn, Serio & Swilley, Salvatore J. Serio*, for appellants.
*Jeffrey R. Sliz*, for appellee.